UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
CANDICE SOUZA,

                     Plaintiff,

    - against -

NEW YORK CITY BALLET, INC. and
JOHN-MARIO SEVILLA,

                     Defendants.
-----------------------------------------------------------

JUDGE CASTEL

ECF Case

06 CV 5500

Docket No.:

**COMPLAINT and
JURY DEMAND**



RECEIVED JUL 21 2006 U.S.D.C. S.D. N.Y. CASHIERS

**PLEASE TAKE NOTICE** that Plaintiff Candice Souza hereby demands that all papers be served on her attorneys, Alterman & Boop LLP, at the address set forth herein.

**PLEASE TAKE FURTHER NOTICE** that Plaintiff, by her attorneys, Alterman & Boop LLP, complaining of defendant, alleges:

### NATURE OF CLAIM

    1.     This action is brought to remedy discrimination on the basis of national origin, race, sex and religion and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, the New York City Human Rights Law, Administrative Code of the City of New York (the "Code") § 8-101 *et seq.* (the "CHRL") and 42 U.S.C. § 1981 ("Section 1981).

    2.     Plaintiff seeks such damages as may be appropriate pursuant to Title VII, the CHRL and Section 1981.

    3.     Plaintiff also seeks costs and attorneys' fees pursuant to the Title VII, the CHRL and Section 1981.

    4.     Plaintiff seeks punitive damages as may be appropriate pursuant to Title VII, the CHRL and Section 1981.

## JURISDICTION

5. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 with respect to claims under Title VII and Section 1981. The Court has supplemental jurisdiction of this matter pursuant to 28 U.S.C. § 1367(a) with respect to claims under the CHRL.

## VENUE

6. This action is properly before this Court as the complained about conduct occurred in the County, City and State of New York.

## ADMINISTRATIVE REQUIREMENTS

7. On or about December 9, 2005, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC").

8. The EEOC issued a Notice of Right to Sue on or about February 27, 2006.

9. This Complaint was timely filed.

## PARTIES

10. Plaintiff Candice Souza, an Asian female of Chinese descent and a practicing Christian, is a resident of the County, City and State of New York and the former Manager of the Public Programs, in Defendant New York City Ballet, Inc.'s ("NYCB") Education Department (the "Department").

11. Upon information and belief, Defendant NYCB is a domestic not-for-profit corporation with its principal place of business at The New York State Theater, 20 Lincoln Center, New York, New York 10023.

12. Upon information and belief, Defendant NYCB employs more than fifteen (15) persons and is an "employer" within the meaning of Title VII and the CHRL.

13. Upon information and belief, at all relevant times set forth herein Defendant John-Mario Sevilla was a manager of Defendant NYCB and, after July 2004, the Director of Education, and Plaintiff's immediate supervisor. Upon information and belief, Defendant Sevilla is of Filipino descent and grew up in Hawaii.

## FACTS

14. Plaintiff was hired by Defendant NYCB on or about September 9, 2002 as the Manager of the Public Programs, in the Department.

15. On or about July 2004, Defendant Sevilla became the Director of Education and Plaintiff's immediate supervisor.

16. Throughout her employment at Defendant NYCB, Plaintiff was the sole member of the Department of Chinese descent.

17. With the exception of Defendant Sevilla, the staff of the Department is female.

18. In addition to Plaintiff, staff members of the Department between July 2004 and November 2005, both past and then-current, included four Caucasian women, two African-American women, Defendant Sevilla and Plaintiff.

19. Commencing in or about the fall of 2004 and continuing through and including October 2005, Defendant Sevilla publicly made repeated offensive remarks and gestures about Plaintiff's ethnic and racial background.

20. At a staff meeting in or about the fall of 2004, Defendant Sevilla publicly identified Plaintiff as a "chink in [someone's] armor. Plaintiff immediately questioned his use of the term "chink" when referring to her.

21. Commencing in or about December 2004 and continuing through and

including October 2005, Defendant Sevilla publicly and repeatedly referred to Plaintiff's "ching chong ching" and pulled his eyes so as to slant them.

22. At a staff meeting in or about April 2005, Defendant Sevilla publicly referred to being cheap as being "chinksy". When questioned by a staff member as to whether he meant "chintzy", Defendant Sevilla affirmed that he meant "chinksy".

23. In or about October 2005, Defendant Sevilla publicly stated that there were "just one too many Asians" in the office.

24. At a staff meeting on or about November 2, 2005, Defendant Sevilla publicly stated that Plaintiff needed to be "chinked" in to an upcoming presentation for donors.

25. Plaintiff immediately complained to Defendant Sevilla about the use of the term "chinked", asking him if he had really made that remark. Defendant Sevilla confirmed that he had used the word "chinked" and ignored Plaintiff's complaint.

26. Defendant Sevilla repeatedly and publicly referred to being cheap as "that's so Chang".

27. Upon information and belief, Defendant Sevilla knew that remarks such as "ching chong ching", "that's so Chang", "chinksy" and "chinked" are inherently racist and derogatory to Plaintiff and her Chinese national origin.

28. In or about May 2005, Defendant Sevilla publicly stated that performance tools looked like "giant dildos". At the time he made this remark, Defendant Sevilla was standing near the Kids' Kiosk, a resource table for families attending performances at the New York State Theater. Upon information and belief, families, including children were within earshot of Defendant Sevilla when he referred to "giant dildos".

29. At a staff meeting in or about June 2005, Defendant Sevilla publicly and

in a suggestive, sexually provocative manner, referred to " Point of Entry" (the name of a theater company) as being his "favorite". Plaintiff and another staff member immediately complained to Defendant Sevilla about his sexual innuendo.

30. Defendant Sevilla repeated the sexual comment at a subsequent staff meeting.

31. In or about July 2005, Defendant Sevilla publicly referred to himself as his supervisor's "butt boy", a derogatory term used to identify a homosexual.

32. In or about October 2005, Defendant Sevilla publicly drew unwarranted attention to a protrusion in the groin area of a child's drawing of the character of the Nutcracker, shoving the drawing in Plaintiff's face despite her attempts to ignore him and look away, and remarked that it looked like a penis.

33. On or about November 2, 2005, Defendant Sevilla publicly told an inappropriate sexual story, repeatedly emphasizing the words "huge vagina".

34. On or about November 2, 2005, Plaintiff prepared and presented to Defendant Sevilla a draft copy of the winter 2006 Family Fun Children's Guide to the Ballet. Shortly thereafter, Defendant Sevilla returned it to Plaintiff with one minor correction and a written comment one of the scenic designers mentioned "was also Tom Ford's first male lover, which is a really, really fun fact."

35. In or about the summer of 2005, Defendant Sevilla publicly and repeatedly made derogatory remarks about "religious freaks", knowing that Plaintiff was a practicing Christian.

36. Defendant Sevilla publicly repeatedly mocked Christians as backward, ignorant hicks who irrationally believed in creationism and intelligent design.

37.     Defendant Sevilla publicly repeatedly performed imitations of evangelical church-goers, waving his hands in the air and yelling "Praise the Lord! Hallelujah! Praise Jesus! Hallelujah!"

38.     Defendant Sevilla admitted using the terms "chinked" and "chinksy" and the expression "that's so Chang" publicly in the workplace in the course of his employment. Defendant Sevilla admitted using the term "point of entry" while being aware of its sexual connotation and using the term "butt boy" with reference to his relationship to his supervisor publicly in the workplace in the course of his employment. Defendant Sevilla admitted calling attention to the penis in the child's Nutcracker drawing publicly in the workplace in the course of his employment. Defendant Sevilla admitted commenting publicly in the workplace in the course of his employment that a scenic designer was Mr. Ford's first male lover. Defendant Sevilla admitted referring to "religious freaks" or "religious fanatics" publicly in the workplace in the course of his employment.

39.     Defendant Sevilla's conduct as set forth in paragraphs 19 through 37, *supra*, created a hostile work environment.

40.     Defendant Sevilla knew or should have known that his conduct was racist, sexually provocative, harassing and demonstrated an anti-religious animus.

41.     In or about July 2005, a new outreach intern position became available. Among the applicants was an Asian-American woman with excellent credentials. When Plaintiff praised her, Defendant Sevilla remarked in a negative manner that she was Asian.

42.     In addition to this Asian-American candidate, an African-American candidate with excellent credentials was also interviewed for the position.

43.     In or about August 2005, a Caucasian woman who, upon information and

belief, was less experienced and less qualified than either the Asian-American or African American candidate was hired by Defendant Sevilla for the position.

44. In or about June 2005, Plaintiff, who had not received a merit raise or promotion since beginning at Defendant NYCB despite increased responsibilities, prepared the necessary supporting documents for an increase in salary and a promotion and requested that Defendant Sevilla review them and asked him to prepare other necessary supporting documentation.

45. Defendant Sevilla did not prepare appropriate supporting documentation in a timely manner.

46. Supporting documentation for a salary increase was submitted in or about late July 2005, after the commencement of the 2006 fiscal year and, upon information and belief, after budgets had been finalized.

47. Plaintiff was informed in or about September 2005 that she had been denied a merit raise and that a promotion had never even been considered.

48. Upon information and belief, non-Asian, non-Chinese, non-religious and/or female staff members in other departments whose job responsibilities and length of employment paralleled those of Plaintiff received promotions and merit raises.

49. On November 4, 2005, Plaintiff informed Defendant Sevilla that he had subjected her to harsh and negative treatment, that she was being treated differently than all past and present staff members of the Department and that she was going to file a formal complaint.

50. On November 7, 2005, Plaintiff reported to work. At the end of the day, Plaintiff was handed a critical memorandum by Defendant Sevilla, who told her to go home and

not to report to work until November 10, 2005.

51. In accordance with procedures set forth in Defendant NYCB's personnel handbook, on November 9, 2005, Plaintiff sent an e-mail to the Employment Practices Committee (Director of The Balanchine Trust Ellen Sorrin, General Manager Ken Tabachnick and Chief Financial Officer Brooks Parsons), Director of External Affairs Christopher Ramsey, Human Resources Representative Cynthia Herzegovitch and Defendant Sevilla making a formal complaint about Defendant Sevilla's discriminatory conduct.

52. Upon information and belief, Plaintiff's complaint of discrimination was not investigated before she was terminated.

53. On November 10, 2005, six (6) days after Plaintiff informed Defendant Sevilla that she was going to file a formal complaint about his discriminatory conduct and one (1) day after she filed a formal complaint, Plaintiff was terminated by Defendant Sevilla and Parsons for reasons which are pretextural.

54. Plaintiff was terminated in retaliation for having complained about Defendant Sevilla's discriminatory and illegal conduct.

55. Upon information and belief, our client's duties were taken over by the Caucasian outreach intern who was hired in or about August 2005 and was significantly less experienced and less qualified than Plaintiff.

56. Defendants' conduct as set forth herein was outrageous and malicious and was intended to, and did, injure Plaintiff.

57. As a direct and proximate consequence of Defendants' conduct, Plaintiff has suffered pecuniary and non-pecuniary losses.

### AS AND FOR A FIRST CAUSE OF ACTION
### DEFENDANT NYCB'S VIOLATIONS OF TITLE VII

58. Defendant NYCB's conduct as described constitutes willful discrimination and retaliation in violation of Title VII.

59. Plaintiff is entitled to damages as a result of Defendant NYCB's violation of Title VII.

### AS AND FOR A SECOND CAUSE OF ACTION
### DEFENDANT NYBC'S VIOLATIONS OF SECTION 1981

60. Defendant NYCB's conduct as described constitutes willful discrimination in violation of Section 1981.

61. Plaintiff is entitled to damages as a result of Defendant NYCB's violation of Section 1981.

### AS AND FOR A THIRD CAUSE OF ACTION
### DEFENDANTS' VIOLATIONS OF THE CHRL

62. Defendants' conduct as described constitutes willful discrimination and retaliation in violation of the CHRL § 8-107(1)(a) and § 8-107(19).

63. Plaintiff is entitled to damages as a result of Defendants' violation of the CHRL.

### **PRAYER FOR RELIEF**

64. Plaintiff respectfully prays this Court award her:

(a) pursuant to Title VII, the CHRL and Section 1981 an award of damages, including but not limited to back pay, front pay and all other benefits to which Plaintiff is entitled, with prejudgment interest;

(b) pursuant to Title VII, the CHRL and Section 1981 an award of actual and compensatory damages in an amount to be determined at trial for emotional distress

suffered by Plaintiff as a result of Defendants' discriminatory conduct;

(c) pursuant to Title VII, the CHRL and Section 1981, punitive damages in an amount to be determined at trial;

(d) pursuant to Title VII, the CHRL and Section 1981, reasonable attorney's fees and costs of this action; and

(e) such other and further relief as this Court deems just and proper.

## JURY DEMAND

**PLEASE TAKE FURTHER NOTICE** that Plaintiff demands a trial by jury.

Dated: New York, New York
June 20, 2006

Respectfully submitted,

ALTERMAN & BOOP LLP

By: _____
DANIEL L. ALTERMAN [DLA0454]
35 Worth Street
New York, NY 10013
(212) 226-2800

Attorneys for Plaintiff

TO: NEW YORK CITY BALLET, INC.
New York State Theater
20 Lincoln Center
New York, New York 10023

JOHN-MARIO SEVILLA
c/o New York City Ballet, Inc.
New York State Theater
20 Lincoln Center
New York, New York 10023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CANDICE SOUZA,

      Plaintiff,

 -against-

NEW YORK CITY BALLET, INC. and JOHN-MARIO SEVILLA,

      Defendants.

**COMPLAINT**

ALTERMAN & BOOP LLP 5.38

*Attorney(s) for* Plaintiff

*Office and Post Office Address, Telephone*
35 Worth Street
New York, New York 10013-2935
(212) 226-2800

To

Attorney(s) for

Signature (Rule 130-1.1-a)

Print name beneath

Service of a copy of the within is hereby admitted.

Dated: _____

**PLEASE TAKE NOTICE:**

☐ **NOTICE OF ENTRY**

that the within is a *(certified)* true copy of a
duly entered in the office of the clerk of the within named court on

☐ **NOTICE OF SETTLEMENT**

that an order              of which the within is a true copy
will be presented for settlement to the HON.    one of the judges of the
within named Court, at
on          at      M.
Dated,